Please call the first case. 213-421, Jason Loftis v. Miro, Federal. Counsel, you may proceed. Thank you. May it please the court, counsel. My name is Alan Bruggemann. I'm counsel for the petitioner Jason Loftis. In an appeal of a 19B1 hearing that denied him benefits. Excuse me. Excuse me. Happens all the time. Jason Loftis was injured on November 23, 2010. He filed a workers' compensation case 11-12-670. And he requested a 19B1 hearing in 2012. Because his doctor required, suggested surgery and the employer was not going to pay for any treatment. There was a couple of delays in this case that extended how we got to hearing. First, when I started to investigate the claim, he told me he was hired by a person, gave me his name, who was working for a general contractor that was doing construction, a remodel in addition to a house, a single family home in Naperville, adding a room on the third floor. I did a freedom of information request to the village and asked for a building permit so I could find out who was doing the work. And no building permit had been obtained. Is all of this in the record? Yes, it is. Okay. The village actually then stopped the work, a building permit was obtained, and I filed the claim initially against the guy that hired him, as well as Eurotech Cabinetry and Remodeling Corporation, who was listed on the building permit as the general contractor doing this room addition. At the 19B1 hearing, Eurotech Cabinetry and Remodeling Corp, their insurance carrier, admitted they were covered by the compact and they were liable for this claim because the person that they hired as a subcontractor who hired Jason Loftus didn't have insurance, and that's how we got against the general contractor. We did it as a 19B1 in addition because my client had spent six months incarcerated in jail, and that delayed some medical treatment. He was unable to get medical treatment while he was in jail, and so when he came out, he followed up with medical care, and then Dr. Templin recommended that he have a fusion. Can I ask a question? Do we have any of Dr. Templin's records in the record? We put Dr. Templin's records in mostly his reports. I think they start at 5A, B, 6, 7, and 8. Exhibit 8 is a progress note from Insdale Orthopedics, which is Dr. Templin. Does he give any causation opinion in any of these records you put in the record? I think there's a couple things of Dr. Templin that give causation. First of all, his exhibit number 9 that I introduced, it's a report dated November 23, 2011. It's titled Order for Treatment, and it's addressed to whom it may concern. What does it say about causation? Well, he says that he recommends an L5-S1 transformer lumbar interbody fusion, and then he goes on to say, I demand utilization review pursuant to Section 8.7 of the Illinois Workers' Compensation Act and all URAC standards. So clearly he's not a lawyer, but as a doctor he's saying this is covered by work comp, this is a work injury. Well, I think what is the real issue here? We're all familiar with the record and all the facts, but the commission did not find his present condition of ill-being to be related to this incident that occurred at work. Is that correct? Correct. He found that there was an injury, and the testimony of all four witnesses was he fell off a ladder, and he fell, according to my client, through the floor that they were working on. Well, we know there's a dispute there. We have some people saying his foot went through drywall and he remained upright. He says, I fell off the ladder and I landed on the floor. Judge, the drywall was of the ceiling below, and there's no question, nobody said he didn't protrude through the floor. Not protrude, but there's a difference between how far did he go down and hit the floor. Absolutely, Judge. I remember the old adage, you can drown in an inch of water. I would suggest you can, if you fall. And I went through quite a bit of testimony about where the flooring had been laid because of work. Wait a minute. Let's assume for a minute he did fall through, and there's no dispute about that. Bernstein's testimony was that his current complaints are inconsistent with the MRI results, and that even if he suffered a low back injury on November the 23rd, he would have been at MMI within six months of the accident. There isn't any medical evidence to convict him. Judge, Bernstein's report I mentioned in the argument to the arbitrator and in the transcript. He gave his report before the second MRI. So Templin had the benefit of a second MRI that shows his condition is getting worse. I don't think anyone disputes he has the condition. The question is what caused the condition. Bernstein says it didn't happen from the November 23rd incident because that's inconsistent with the first MRI. Well, I don't think it is inconsistent with the first MRI. Well, you don't know, but the commission did. But the first MRI shows a herniated disc, a large herniation. And if you look, Dr. Bernstein expressly makes the report that there is nothing. I want to read it to you. He says there's no history besides the fall that's significant. In other words, he has no history of any other injury. He has no history of any other condition. Bernstein comes to the conclusion that, you know, he talks about the X-ray taken on the day of the fall at the emergency room. Look, here, if you had introduced expert medical testimony that gave you a causation opinion that related his current condition of ill-being to the fall on November 23rd, you'd have a different case on your hands. You've got Bernstein with the only causation opinion in this record. There is none other. Dr. Templin says in his report, quote, Mr. Laffer presents to me for evaluation. This is December 7th, 2010, two weeks after the fall. We understand what your client was telling Dr. Templin. What I'm suggesting to you, there is no opinion by a doctor in here that his current condition was actually caused by that fall. And we're talking about current condition. We're not talking about the condition two weeks after the fall. Even Bernstein admits that this guy had some injury, but he said he would have been at MMI within six months. Where do you go with that kind of witness? I mean, this was a 19B1, and as you know, we submit the reports ahead of time for a 19B1, and you can't go beyond what you submit in your 15-day notice. Had I had the opportunity to try this as a final case, I would have taken the deposition or called Dr. Templin live. This was a 19B1. I mean, you're stuck with the record. I understand I'm stuck with the record. But I think not only is the arbitrator's opinion against the manifest way and the evidence, it's not supported by any evidence. I think the arbitrator improperly allowed into evidence the fact that he was incarcerated, and maybe that makes him a liar to influence his opinion about the plaintiff's or the petitioner's testimony. Setting aside the incarceration, okay, that probably could be a red herring, but let's not get into that. There are reasons why the claimant's credibility are an issue here because, as you know, none of the witnesses, including the claimant's own brother, his own brother who was there, supported his version that he struck the floor with his knee. All of them say that didn't happen. So what's the arbitrator to make of that? Everyone, including the current witnesses, including his own brother, don't support his version. One guy is not facing the way, facing Mr. Roth is when he falls. Mr. Kozel or Rozel said he was looking the other direction when my client fell. What about the other witnesses? The other witnesses says, the other witness clearly says, the other employee, he's not my client's brother, clearly says my client fell through the floor joist, went through the ceiling below. How do you do that without hitting your knee? How do you do that without hurting your back? My client's testimony said he fell on the joist of the floor below him in his back, or in his knee and he rolled over and hit his back. Do they have to believe your client? Is there anything that says they have to believe his version? I've got cases that say that his testimony alone is sufficient, but I've cited those cases. No, that's not the case, sir. Sir, you're entirely correct. If the commission chose to believe him, they could have. They're the decider of credibility. You know, we went through this yesterday, and I'll do it again. When you're dealing with manifest weight, there is no right answer. There's an A possibility. There's a B possibility. The commission chooses between A and B. As long as there's evidence in the record to support their choice, how do we interfere with it? By what right? And you've still got to get around Bernstein's opinion. I mean, that's what these cases boil down to. It's not that one side has to be right and the other side has to be wrong. Either side could be right depending on which one the commission chooses to believe. So tell us succinctly why Bernstein's opinion is flawed. I mean, that's where you'd have to go here, because clearly he provides the opinion that it's not related to the action. So why is his testimony flawed or his opinion flawed? I don't think you – Bernstein does not say he wasn't injured in the fall. No. He says at the time he examined him, he didn't receive any further treatment. Bernstein says that his current conditions are not – the current condition or complaint is not borne out by the original MRI that was taken. And second of all, based on his opinion, that whatever minor injury your client sustained as a result of the fall, he called it a low – suffered a low back injury, would have – he would have been at MMI within six months of the accident, is exactly what Bernstein said. Well, and you also have to take the negative inference that he says. If, in fact, he had disc herniations as a result of this work incident. So Dr. Bernstein knows the disc herniations. He refers to them as a broad central profusion at L4 and 5, a partial disc complex at L5, S1. He diagnoses and describes the injury that my client has or the condition, medical condition my client has, and he says – he doesn't say it didn't happen at work. He says if, in fact, he had the disc herniation, which he has, as a result of the work incident, which Templin says he did, then he would be at maximum medical improvement. If you follow that opinion of Dr. Bernstein, you want to rely on that any way you want, you still have to find my client proved causal connection to his condition of ill-being. You may not order surgery. You may not order a knee exam by an orthopedic surgeon. And you may not give him any further relief, but you certainly would give him TPD for the time he was off work. You would pay for the medical treatment he did get, and that would be required under the Act. There's just no way you can interpret Dr. Bernstein, who does one exam and does them for the petitioner or for the respondent repeatedly, who says that kind of a report that he wasn't injured at work. There's just no way that report supports that finding. So I suggest that there's no evidence that my client wasn't injured at work. He'd had to have been injured somewhere else. He'd had to have had some other medical condition. A 35-year-old male, don't have protruding discs, bulging discs, large herniations without some occurrence. Bernstein concludes there was no other contributory history. I didn't read that to you. I was starting to find it to read it to you. We've read it. That's the problem. Pardon? We've read Bernstein's report. Everybody up there has read it. His past medical history is negative. In the testimony that he gave to Schumer or something, they said he had minor back problems prior to this. Correct. But Bernstein says that's not heard. He rules it out. He says it's not a contributing factor to his condition. So the only contributing factor to his condition is the fall of work. And to get in a dispute, Mr. Kossel is the guy that hired him and who we originally sued under Compact who didn't have insurance and didn't have a contract and was paying my client in cash. His credibility should be more suspect than my client's who says he fell off a ladder. Yes, there was a dispute about how high he was up on the ladder, but the two of them that were working on those ladders said they were up at the ceiling hanging ceiling joists. So they're on ladders that are on a plywood temporary floor on joists of the room below. They're up here over 8 feet high putting big, long beams up, and they're nailing them with nail guns. So he's holding a beam, he's got a nail gun, and he slips and falls to the ground. You can argue that's secure. One person said he didn't fall but 2 feet. Remember, that person said he was looking away when my client fell. The other guy says he fell through the drywall below and through the floor all the way. I mean, you've got joists. You've got temporary plywood here. You've got drywall down below and the ceiling. He fell all the way through those joists. Nobody testified, but joists like that are usually 16 inches apart. You don't fit through there without hitting your body on it, and especially when you go all the way through the floor and then get stopped by the joists themselves. You didn't give up the question of whether he was entitled to medical expenses prior to the date of the arbitrator's hearing. Now, according to the arbitrator's report... And TTD. Both of those are reserved. Exactly. So why are you arguing that at least he should get it? That's not an issue before. Well, but if you have no causal connection... You have no causal connection to his current condition of ill-being is what they found. So you're saying I can go back to the commission... Well, that's what the arbitrator said, and that's what the commission concurred in. The only question is current condition of ill-being. Sorry again. And you've got an opinion there that says his current condition of ill-being is not related. And again, I don't think that's supported by any evidence. Even Bernstein's opinion doesn't really say that. He says he needs a functional evaluation exam, functional capacity exam. He says that's what he needs to determine what work he can do. Why would he want that to determine what work he can do if it's not because of a work injury? So if Bernstein's request is honored and he gets this functional evaluation capacity, and they find out he's dead or they find out his back is so bad he can't ever work, wouldn't that entitle him then to payment for a permanent total disability? I would think it would. Bernstein's report does not rule out that he was an injury at work. Thank you. I know I've taken more time. Thank you, Counsel. You'll have time to reply. Counsel, you may respond. Thank you, Your Honor. And if you'd address those last points. Sure. My name is Matthew Sheriff from Brady County, Missoula. I represent the Appellee EuroTech Cabinetry. There was a couple issues addressed about an employer and his incarceration. Those are not really relevant to you today. As you've all indicated, this is a manifest weight case. Arbitrator O'Malley and the Commission and the Circuit Court all found that there was no evidence that supported the petitioner's assertion that there's a causal connection between this alleged incident and his current condition. There's no evidence in the record that would cause you to have to flip that on a manifest weight standard. Well, he throws down the bone. But what about this rhetorical question? All right. Obviously, witnesses testified he didn't go through the ceiling to a certain extent. That's not a dispute by anybody, is it? They're all – there's differing, as you indicated. Each witness testified to a different version of the accident, including, as you said, his brother. Some of them are falling from a short distance. Some have them falling from a higher distance. Now, the petitioner – Okay. We've got a fall. Right. So we don't need to go there. I think, listen to the question. It's not a dispute. He says, okay, there's a fall. It's a witness. There's no question about it. The type of fall is an issue. He's saying there's no history of any bad problems. He has all these problems. So he says, how could it not have happened at work? So what's your response to that? Well, there was some history. His testimony was that he did have some prior problems in 2004. And there was also just an absence of the medical records to support his assertions. Now, the arbitrator called into question his credibility. I think based on the differing versions. The petitioner testified that he fell off a 10-foot ladder. The employer testified that's impossible. Where they're – the space they're working, there were no 10-foot ladders. It's impossible that it occurred the way he described it. I think that went into the arbitrator's finding that there was lack of credibility based on the petitioner's testimony. It appears that the petitioner was trying to get the case granted based solely on his testimony. The hearing officer didn't agree. The commission did not agree. They reviewed the record. The circuit court reviewed the record. They did not agree either. I don't believe there's anything in the record that would show that the findings that were made in the lower courts were against the manifest way of the evidence. And as you've indicated, there's – I have a little trouble with this opinion. And I'll tell you where the trouble arises. The arbitrator found in the commission affirmed and adopted the statement that in light of the arbitrator's determination, the arbitrator finds that the petitioner failed to prove his indictment to prospective medical care and treatment. They turn around to base upon the record taken as whole, finds that the petitioner failed to prove by preponderance of credible evidence that his current condition of ill-being relative to his low back and right knee are causally related to the accident. That's current condition. Then it goes on to say the parties agreed at the commencement of trial that the issue of medical expenses for treatment prior to the date of hearing on August the 8th, 12th, would be reserved and deterred for a later hearing on the issue of permanency. And then the arbitrator goes along and says in light of the determination as to causation on issue F, that's current condition, the arbitrator finds that the petitioner failed to prove his indictment to TTD. Accordingly, his claim is denied. Now, and the commission never remanded this pursuant to Thomas. That's not possible. He's still entitled to a hearing at least on the medical expenses. It has to go back pursuant to Thomas for that hearing. You said you reserved it. And what about his TTD prior for the first six months that even Bernstein suggested he wasn't at MMI until six months after? Did he lose any time at work in the first six months? That wasn't argued. That evidence wasn't put in, Judge. So I don't think the arbitrator could make a finding on that. We could. So what do we do with this case? He chose not to. He chose to find that there was no temporary total disability warrant. That's the way I read the decision. But he chose to find that there is none based upon his current condition of ill-being. What about the condition that existed for the first six months that even Bernstein's evidence says he suffered some type of low back injury? I think that it's based on the history as provided by the petitioner, which the arbitrator chose to disregard. That's my understanding, Judge. There was no evidence from any treating physician regarding a causal connection opinion. The arbitrator said the following. Based upon the above and the record taken as a whole, the arbitrator finds that the petitioner sustained the accidental injuries arising out of and in the course of his employment on November the 23rd. Correct me if I'm wrong, but he sustained an accidental injury. But I don't believe he found a causal connection to any issues, either TTD or permanency. He could find an accident and there's no injury. Maybe that's what he awarded. No, they said he sustained injury arising out of and in the course of his employment. They found he sustained an injury. So if he sustained an injury and Bernstein says he reached MMI within six months, why doesn't this go back pursuant to Thomas for the guy to have a hearing on the TTD for the first six months and the reserved issue that you evidently reserved, and that's his medical records, based upon whatever his condition was, his low back injury that reached MMI six months later, not his current condition. That's disposed of. Right. I understand that, Judge. Well, I think the arbitrator found that he's using a causal connection opinion of the IME physician who was basing his causal connection opinion on the history provided by the petitioner, which the arbitrator has found not credible. Well, if that were the case, he wouldn't have found that the guy sustained injuries arising out of and in the course of his employment. You can't run with the hounds and hide with the fox. It's one or the other. What I'm saying is there's an inconsistency between that and the written finding, right? Right. Well, I don't know if you'd characterize it as an inconsistency. There is a conclusion there. There's a finding of an accident, right? Correct. And so where is the medical at that point? And then there's also Bernstein's opinion of MMI six months later, or that he said it would have, the condition would have resolved. Correct. So I don't think it's MMI. It would have resolved. And there's no evidence regarding the severity of the, whatever the injury may have been. Just because you have an injury doesn't mean you're entitled to TTD. Correct. And there was no evidence regarding that. Right. There was no evidence at all regarding the alleged right knee injury, which he testified to. There was no evidence whatsoever by any treating physician regarding that alleged injury. And how many visits to a medical facility or provider did the claimant make after the fall? After the fall, he went several times. Well, he testified to an emergency room visit and a couple follow-up visits. And then, as counsel indicated, there was a break in the treatment due to unrelated issues. Right. And then there was a significant break in time. And then he returned after that. And after his release, then he started to return to Dr. Templin. But that was after a decent period of time. Again, Judge, I believe that based on the evidence before you and the decisions made in the lower, in the commission and the lower courts, I ask that you please affirm the decision as not against the manifest weight of the evidence. Thank you. Thank you, counsel. Counsel, you may reply. How much time was he off work between the date of the injury or for the first six months after the injury? Judge, he did lose time from November 23rd until he was incarcerated. I believe his incarceration started in January, late in January. I think we put that in the record. My client did, and we admitted into evidence Petitioner's Exhibit No. 2, which is a list of different doctors that he saw, including Hinsdale Orthopedics, Dr. Templin, Provena St. Joe's Medical Center for Emergency Room, low back pain, right pain, dates of service 11-23-10, 12-1-3, 12-3, 12-9, 12-14, excuse me, 12-16-2010. That's on an exhibit that was admitted into evidence about his treatment. Also goes through dates of physical therapy with ATI Physical Therapy, gives all the dates of his physical therapy. That's in that two-month period following the accident. Some of it's in the two-month period following the accident. Some of it's after he's released from jail. I don't think we're real interested in that period. We're talking about the immediacy period. He has approximately two months after the fall before he's incarcerated. Correct. And he does have those listed. Again, the emergency room, those are November 23, 2010, the date of the accident, and then several in December. He's got Templin down, and we have reports from Templin about when he saw him up until he was incarcerated. We do have Dr. Templin's report that says he should be off work. I'm looking to see what date that's. Why was the issue of the medical expenses incurred prior to the arbitration hearing reserved? They were, I shouldn't say insignificant, they weren't significant compared to the cost of the prospective surgery. This was a 19B1. He already had that treatment. We didn't care about getting it paid for then. We wanted to get him his fusion, which Dr. Templin says he needs so he can return to work. Dr. Templin, even on August 2, 2011, signs and files a statement to say his work status, he should be off work until he has further treatment. It's Exhibit Petitioner's No. 6. We introduced added evidence to show he was still off work when we went to the 19B1 and why he needed the surgery. Again, this preceded the 19B1. I wish I could have done it as a full and complete hearing and call witnesses and taken depositions, but we were limited to the 19B1 because he needed the surgery. And, you know, proceeding to a case where he needs surgery before he has the surgery, you know, that's, I thought 19B1 was the way to do that. Maybe it was my mistake, but I don't think there's any evidence that supports, after a finding that he was injured in a fall at work, that he has improved causal connection to any of his injury. If the arbitrator had maybe made a finding expressly that he's, you know, that the need for surgery has not been proved as causally related, I'd be arguing that, because I think Dr. Templin's report, although doesn't write it the way I would like to have had him write it, he clearly, clearly refers to the Workers' Compensation Act and says, you don't like my opinion, I want it reviewed. So he clearly thinks it's work-related and covered by the Work Compact. Okay. He wants it reviewed for what? If they won't pay for his surgery and if they won't approve the surgery for this patient. Again, he says on that form, which is Exhibit 9, Petitioner's Exhibit 9, he writes, to whom it may concern. Right, right. I mean, it's a utilization review, am I correct? Yes, but under Work Comp, not under Blue Cross Blue Shield, Medicare, Medicaid, anything else. Well, it's under Section 8.7 of the Illinois Workers' Compensation Act. Clearly that indicates Dr. Templin considered this to be a work injury. Well, if one were cynical, one could suggest Dr. Templin was concerned about getting paid for the surgery, and he couldn't get paid unless it was Work Comp. He'd probably have been a lot better off getting paid by the State of Illinois or from my client's health insurance had he not caused a work accident. Yeah, except for one problem. Your client was incarcerated, wasn't he? Did he have any health insurance by that point in time? Well, when he was incarcerated, actually the county is responsible for his health care and would have had to pay for it also. Then he should have had the operation then. But the only thing I'm telling you is you've got a real problem on current condition. There is a problem with this opinion on what happened in those first six months. There's a serious problem with this decision. Again, I think it was totally biased by the arbitrator. I mean, if you remember in Bernstein's report, I objected to the parts of the report that referred to his incarceration and his untruthfulness, and the arbitrator said, well, I'm going to let it in anyhow. I think the arbitrator was so hung up on the fact that my client spent six months in jail that he just wasn't giving him the compensation, and I don't think there's any evidence to support his finding. And I would also suggest neither the Industrial Commission nor Judge Wheaton, who I find to be a wonderful judge, make any findings, make any deviation, they just adopt the arbitrator's decision. So they don't go into any detail about why it's right, why they think that it should be not sent up to you. Thank you, counsel. Thank you, counsel, both. This matter has been taken under advisement and written disposition.